# Exhibit A

**SUPERIOR COURT OF WASHINGTON**
**FOR KING COUNTY**

| | |
|---|---|
| MALINA BROWN,<br>for herself, as a private attorney general, and/or on behalf of all others similarly situated,<br><br>                                    Plaintiff,<br><br>v.<br><br>TORRID LLC,<br><br>                                    Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE CONSUMER PROTECTION ACT, RCW 19.86, AND THE COMMERCIAL ELECTRONIC MAIL ACT, RCW 19.190** |

Plaintiff Malina Brown, demanding trial by jury as to all issues so triable in a separate document to be filed, alleges as follows, on personal knowledge and upon the investigation of her counsel, against Torrid LLC ("Torrid" or "Defendant"):

## INTRODUCTION AND SUMMARY

1.      This is a class action against Torrid for false or misleading email marketing in violation of the Washington Consumer Protection Act ("CPA"), RCW 19.86, and the Washington Commercial Electronic Mail Act, ("CEMA"), RCW 19.190.

2.      Torrid is a direct-to-consumer brand, designer, marketer, and retail seller of plus-size women's clothing and accessories. Almost all the items offered for sale by Torrid on its website www.torrid.com and advertised in its email marketing are offered and sold exclusively by Torrid.

3.      For years, Torrid has engaged in a massive and consistent false discount advertising scheme across its website and in its marketing emails. Specifically, Torrid advertises perpetual or near-perpetual discounts—typically 40% to 70% off—on all its products. These discounts are taken from Torrid's inflated and self-created list prices for its products. Torrid's advertised discounts are viewed both under the law and by reasonable consumers to refer to discounts from Torrid's regular offering prices for the products. However, Torrid's advertised discounts are false because Torrid never or almost never offers or sells the products at their list price.

4.      Torrid also falsely advertises that the purported savings are for a limited time and indicates that its products will return to the full price after the sale ends, when in fact the advertised savings are perpetual and never-ending.

5.      An important part of Torrid's false discount advertising scheme is to send a constant stream of marketing emails to consumers that prominently advertise these false discounts in the subject line. Many of the consumers who receive these emails with deceptive email subject lines are Washington residents.

CLASS ACTION COMPLAINT - 1

6.      For example, Torrid sends emails with subject lines that advertise false discounts at a specified purported percentage off (e.g., **"URGENT MEMO! 😲 SURPRISE 50% OFF"**). The stated discounts in the subject lines are materially false or misleading because, in reality, the discounts are being calculated from inflated and fictitious list prices at which Torrid has never or almost never offered its products for sale.

7.      The subject lines of the emails are also materially false or misleading because they advertise that the purported savings are for a limited time and indicate that the products will return to the full price after the sale ends (e.g. **"LAST DAY for 50% off reg. price, including NEW!"**), when in fact the advertised savings are perpetual and never-ending.

8.      The Washington Supreme Court recently held that CEMA "prohibits sending Washington residents commercial emails that contain *any* false or misleading information in the subject lines of such emails." *Brown v. Old Navy, LLC*, 567 P.3d 38, 47 (Wash. 2025) (emphasis in original). This includes false or misleading information about promotions, sales events, or discounts. **"CEMA protects consumers by requiring that commercial emails communicate honestly about the terms of a given promotion or sale in the subject line."** *Id*. "A violation of CEMA's email regulations is a per se violation of the Consumer Protection Act (CPA)." *Id.* at *2.

9.      Ms. Brown brings this lawsuit individually and on behalf of a class of consumers residing in Washington who also received emails from Torrid which contained false or misleading discount advertising in the subject line. Ms. Brown's requested relief includes an injunction to end the unlawful practices alleged herein. Ms. Brown also requests an award to herself and to each class member of $500 in statutory damages for each and every violative email received, and an award of attorneys' fees and costs.

## THE PARTIES

10.      Plaintiff Malina Brown is a citizen and resident of the city of Kent, in King County, Washington. Ms. Brown has resided in Washington State for her entire life, and has been receiving Torrid's promotional emails since at least 2017. Ms. Brown received all of the violative emails described herein while residing in Washington State.

CLASS ACTION COMPLAINT - 2

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

11.     Defendant Torrid LLC ("Torrid") is a California limited liability company headquartered at 18501 East San Jose Avenue, City of Industry, California 91748. On information and belief, its sole member is Torrid Holdings Inc., a Delaware corporation which is publicly traded on the New York Stock Exchange. Torrid LLC owns and operates the Torrid brand, which is a direct-to-consumer designer, marketer, and retail seller of plus-size women's clothing and accessories to consumers in the United States, including in Washington State. Torrid LLC owns and operates the retail website www.torrid.com and also owns and operates approximately 581 Torrid stores across the United States, including 16 in Washington State. Torrid LLC directed the marketing operations of the Torrid brand and perpetrated the unlawful actions described herein—including the creation and sending of the violative emails.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this civil action pursuant to, without limitation, Section 6 of Article IV of the Washington State Constitution (Superior Court jurisdiction, generally), RCW 19.86.090 (Superior Court jurisdiction over Consumer Protection Act claims) and RCW 19.190.090 (Superior Court jurisdiction over Commercial Electronic Mail Act claims).

13.     This Court has personal jurisdiction over Defendant pursuant to, without limitation, RCW 4.28.185, in that: (1) Defendant is registered to do business in Washington State; (2) Defendant has transacted and continue to transact business within the State of Washington; and/or (3) Defendant has committed tortious acts within the State of Washington or has committed tortious acts outside the State of Washington which had an impact within the State of Washington. In addition, Defendant intended, knew, or is chargeable with the knowledge that its out-of-state actions would have a consequence within Washington State.

14.     With regard to the cause of action brought pursuant to the Washington Consumer Protection Act, this Court has personal jurisdiction over Defendant pursuant to RCW 19.86.160. For example, and without limitation, Defendant has engaged and is continuing to engage in conduct in violation of RCW 19.86 which has had and continues to have an impact in Washington State which said chapter reprehends, including operating the Torrid website which

CLASS ACTION COMPLAINT - 3

sells clothing and accessories to Washington consumers, sending marketing emails to Washington consumers, and operating 16 retail stores in Washington State.

15.     Venue is proper in King County Superior Court because, without limitation, Plaintiff resides in King County; a significant portion of the acts giving rise to this civil action occurred in King County; and/or Defendant intended to and did have a substantial and foreseeable effect on trade or commerce in King County, including operating the Torrid website which sells clothing and accessories to consumers in King County, sending marketing emails to consumers in King County, and operating retail stores in King County.

## FACTUAL ALLEGATIONS

16.     Torrid is a direct-to-consumer brand, designer, marketer, and retail seller of plus-size women's clothing and accessories. Almost all the items offered for sale by Torrid on its website www.torrid.com and advertised in its email marketing are offered and sold exclusively by Torrid. These items are labeled under Torrid in-house brands including Torrid, Torrid Curve, CURV, Lovesick, Belle Isle, Retro Chic, Nightfall, and Festi.

17.     The Torrid website is accessible from Washington State and consumers in Washington State can view the contents of and purchase goods from the Torrid website. Torrid sends marketing emails to consumers throughout the country, including thousands of consumers in Washington State.

**A.      Background Information: Torrid's Advertised Discounts Are False.**

18.     For years, Torrid has engaged in a massive and consistent false discount advertising scheme on its website and in its marketing emails. Specifically, Torrid advertises perpetual or near-perpetual discounts—typically 40% to 70% off—on all of its products. These discounts are taken from Torrid's advertised list prices for its products. Torrid's advertised discounts are viewed both under the law and by reasonable consumers to refer to discounts from Torrid's regular offering prices for its products. However, Torrid's advertised discounts are false. Torrid never or almost never offers or sells its products at their list price.

CLASS ACTION COMPLAINT - 4

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

19.     Torrid also falsely advertises that the purported savings are for a limited time and indicates that its products will return to the full price after the sale ends, when in fact the advertised savings are perpetual and never-ending.

20.     Plaintiff's allegations concerning Torrid's false discount advertising scheme are based on Plaintiff's counsel's comprehensive investigation of the Torrid website using counsel's proprietary web scraping software, and also on counsel's investigation of archived Torrid webpages on the Internet Archive's Wayback Machine (available at www.archive.org).[1]

21.     Plaintiff's counsel has been monitoring and scraping the Torrid website on an automated daily basis with a proprietary software program since May 3, 2025. Counsel has compiled and extracted daily pricing and marketing data from the website for most of the products Torrid has offered on its website during this time. In total, counsel has assembled and analyzed a historical database of daily prices and time-stamped screenshots of over 370,000 daily offerings of approximately 9,000 products over this nearly five-month period.

22.     Additionally, counsel examined over one hundred archived screenshots of the Torrid website on the Internet Archive's Wayback Machine going back to 2019. In every single screenshot that counsel examined, every product shown was displayed with a discount from an advertised reference price. Based on this investigation, counsel determined that Torrid's false discount advertising scheme has been going since at least 2019.

23.     Counsel's investigation and data shows that Torrid advertises perpetual discounts for nearly all of its products, typically ranging from 40% to 70% off.

24.     The stated percentage-off and dollars-off discounts are always false, and Torrid's list prices to which the discounts are applied are false and inflated.

25.     Counsel has also investigated and reviewed years of Torrid marketing emails sent by Defendant to its customers. The percentage-off discounts that Torrid advertised, and continues to advertise, in the subject lines of its marketing emails are consistent with the false discounts and pricing on the Torrid website.

---

[1] The Internet Archive is an internet library that archives webpages. For more information, see https://archive.org/about/.

CLASS ACTION COMPLAINT - 5

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

26.    Counsel has also investigated and visited Torrid's physical retail stores on a weekly basis since September 2024. The overwhelming majority of items on the Torrid website are exclusive to the Torrid website and are not available in Torrid retail stores. However, for items offered on the Torrid website which were also available in Torrid retail stores, counsel compared the reference prices and discounts. Counsel found that Torrid's reference prices, advertised percentage-off discounts, and "discounted" prices for its products were substantially the same online and in-store.

27.    Plaintiff's investigation into Torrid's false discount advertising scheme is as thorough as possible under the circumstances. Thus, Plaintiff's allegations which are based on information and belief are permissible. "Without an opportunity to conduct any discovery, [Plaintiff] cannot reasonably be expected to have detailed personal knowledge of [Torrid's] internal pricing policies or procedures." *Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 568 (9th Cir. 2017). "Because [Plaintiff] need not specifically plead facts to which [Plaintiff] cannot 'reasonably be expected to have access,' [Plaintiff's] allegations regarding the fictitious nature of the [reference] prices may properly be based on personal information and belief at [the pleading] stage of the litigation." *Id.* Here, Plaintiff's allegations are based not only on information and belief, but also on a comprehensive investigation of Torrid's historical advertising which was as thorough as possible under the circumstances.

28.    Torrid's false discount advertising is so pervasive across all of its products and in all of its advertising and promotional emails that it is apparent that the heart of Torrid's marketing plan is to deceive the public.

29.    Torrid advertises these false and deceptive discounts because they work and increase sales and profits. Decades of academic research has established that the use of discount advertising like that utilized by Torrid materially impacts consumers' behavior by affecting the consumer's perception of the value of the transaction, the consumer's willingness to make the purchase, and the amount of money the consumer is willing to pay for the product.[2]

---

[2] *See, e.g.*, Richard Staelin, Joel E. Urbany & Donald Ngwe, *Competition and the Regulation of Fictitious Pricing*, 87 J. of Mktg. 826 (2023); Mark Armstrong & Yongmin

CLASS ACTION COMPLAINT - 6

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

30.     Consumers that are presented with discounts are substantially more likely to make the purchase. "Nearly all consumers (94%) search for a deal or offer when shopping online," "81% of [consumers] say finding a great offer or discount is on their mind throughout the entire purchase journey," and "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount." RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

31.     The Ninth Circuit has also acknowledged and explained how false discount advertising materially affects consumer behavior: "Most consumers have, at some point, purchased merchandise that was marketed as being 'on sale' because the proffered discount seemed too good to pass up. Retailers, well aware of consumers' susceptibility to a bargain, therefore have an incentive to lie to their customers by falsely claiming that their products have previously sold at a far higher 'original' price in order to induce customers to purchase merchandise at a purportedly marked-down 'sale' price." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1101 (9th Cir. 2013).

Chen, *Discount Pricing*, 58 Econ. Inquiry 1614 (2020); Rajesh Chandrashekaran & Dhruv Grewal, *Assimilation of Advertised Reference Prices: The Moderating Role of Involvement*, 79 J. Retailing 53 (2003); Pilsik Choi & Keith S. Coulter, *It's Not All Relative: The Effects of Mental and Physical Positioning of Comparative Prices on Absolute Versus Relative Discount Assessment*, 88 J. Retailing 512 (2012); Larry D. Compeau & Dhruv Grewal, *Comparative Price Advertising: An Integrative Review,* 17 J. Pub. Pol'y & Mktg. 257 (1998); Larry D. Compeau, Dhruv Grewal & Rajesh Chandrashekaran, *Comparative Price Advertising: Believe It or Not*, 36 J. Consumer Aff. 284 (2002); David Friedman, *Reconsidering Fictitious Pricing*, 100 Minn. L. Rev. 921 (2016); Dhruv Grewal & Larry D. Compeau, *Consumer Responses to Price and its Contextual Information Cues: A Synthesis of Past Research, a Conceptual Framework, and Avenues for Further Research*, in 3 Rev. of Mktg. Res. 109 (Naresh K. Malhotra ed., 2007); Daniel J. Howard & Roger A. Kerin, *Broadening the Scope of Reference Price Advertising Research: A Field Study of Consumer Shopping Involvement*, 70 J. Mktg. 185 (2006); Aradhna Krishna, Richard Briesch, Donald R. Lehmann & Hong Yuan, *A Meta-Analysis of the Impact of Price Presentation on Perceived Savings*, 78 J. Retailing 101 (2002); Balaji C. Krishnan, Sujay Dutta & Subhash Jha, *Effectiveness of Exaggerated Advertised Reference Prices: The Role of Decision Time Pressure*, 89 J. Retailing 105 (2013); Gorkan Ahmetoglu, Adrian Furnham, & Patrick Fagan, *Pricing Practices: A Critical Review of their Effects on Consumer Perceptions and Behavior*, 21 J. of Retailing & Consumer Servs. 696 (2014); Bruce L. Alford & Abhijit Biswas, *The Effects of Discount Level, Price Consciousness and Sale Proneness on Consumers' Price Perception and Behavioral Intention*, 55 J. Bus. Res. 775 (2002); and Tridib Mazumdar, S. P. Raj & Indrahit Sinha, *Reference Price Research: Review and Propositions*, 69 J. Mktg. 84 (2005).

CLASS ACTION COMPLAINT - 7

**B.    CEMA Prohibits Sending Washington Residents Commercial Emails With False Or Misleading Subject Lines.**

32.    Washington's Commercial Electronic Mail Act (CEMA) regulates deceptive email marketing.

33.    CEMA prohibits a person from initiating or conspiring to initiate the transmission to an email address that the sender knows, or has reason to know, is held by a Washington State resident of a commercial email that contains false or misleading information in the email's subject line. RCW 19.190.020(1)(b).

34.    The Washington Supreme Court has recently confirmed that CEMA "prohibits sending Washington residents commercial emails that contain *any* false or misleading information in the subject lines of such emails." *Brown v. Old Navy, LLC*, 567 P.3d 38, 47 (Wash. 2025) (emphasis in original). This includes false or misleading information about promotions, sales, or other pricing information. **"CEMA protects consumers by requiring that commercial emails communicate honestly about the terms of a given promotion or sale in the subject line."** *Id.*

35.    "CEMA was enacted to protect concrete interests in being free from deceptive commercial emails. CEMA's prohibition on sending commercial emails with false or misleading subject lines . . . creates a substantive right to be free from deceptive commercial emails." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1011 (W.D. Wash. Nov. 27, 2019) (holding that the plaintiff sufficiently pleaded a concrete injury-in-fact for alleged CEMA violations based on her receipt of marketing emails from defendant containing allegedly false "xx% off" statements in the subject line).

36.    An injury occurs any time a commercial email is transmitted that contains false or misleading information in the subject line. *Harbers*, 415 F. Supp. 3d at 1011. Under CEMA, it is irrelevant whether the misleading commercial emails were solicited. *Id.*

37.    "A violation of CEMA's email regulations is a per se violation of the Consumer Protection Act (CPA)." *Brown*, 567 P.3d at 42.

CLASS ACTION COMPLAINT - 8

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

38. Generally, a plaintiff pleading a claim under the CPA must plead five necessary elements: (1) an unfair or deceptive act or practice (2) in trade or commerce (3) that affects the public interest, (4) injury to plaintiff's business and property, and (5) causation. *Wright v. Lyft, Inc.*, 189 Wn.2d 718, 728 (2017). **However, because a violation of CEMA is a per se violation of the CPA, all five elements are satisfied as a matter of law.** *Id.* at 724; *see also Brown*, 567 P.3d at 42.

39. "Under CEMA, the injury is receiving an email that violates its regulations." *Brown*, 567 P.3d at 42. Accordingly, **"CEMA does not require a showing of injury for statutory damages to be awarded because the injury is receiving the email that violates CEMA."** *Id.* at 45; *see also Wright*, 189 Wn.2d at 729 ("[CEMA] does not condition the award of damages on proving either injury or causation. In fact, damages for CEMA violations are *automatic*.") (emphasis in original).

40. A person is entitled to $500 statutory damages "anytime a prohibited message is transmitted." *Harbers*, 415 F. Supp. 3d at 1009; *see also In re Classmates.com Consol. Litig.*, No. C09-45RAJ, 2011 WL 744664, at *7 (W.D. Wash. Feb. 23, 2011) ("[CEMA] provides statutory damages of $500 for every email that violates it."). "Unlike the CPA, CEMA's $500 penalty does not require a showing of actual damages." *Brown*, 567 P.3d at 42.

**C.      Torrid Has Transmitted Numerous Commercial Emails With False Or Misleading Subject Lines In Violation Of CEMA.**

41. Torrid has transmitted numerous commercial emails with false or misleading subject lines to Plaintiff and other Washington residents in violation of CEMA. (As used in this Complaint, allegations that Torrid "transmitted" or "sent" an email are allegations that Torrid initiated the transmission of the email, conspired with another to initiate the transmission of the email, and/or assisted the transmission of the email).

42. Torrid transmits commercial emails with subject lines advertising large percentage-off discounts (typically between 40% to 70% off). These email subject lines are materially false or misleading in violation of CEMA and the CPA because the advertised percentage-off discounts are phony and are calculated from inflated and fictitious list prices at

CLASS ACTION COMPLAINT - 9

which Torrid never or almost never offered its products.

43.    For example, based on the investigation of Plaintiff's counsel, Torrid sent Washington State residents, including Plaintiff, over one hundred violative emails since February 18, 2025. The following is a non-exhaustive list of such emails sent on the date, and containing the email subject line, specified below:

| Date | Email Subject Line |
| --- | --- |
| 10/17/2025 | FINAL HOURS to snag 50% off EVERYTHING |
| 10/17/2025 | Just Dropped! The Holiday Preview: all 50-60% off, all NEW |
| 10/16/2025 | NEW NFL TEES 🏈 For 60% off! |
| 10/15/2025 | PSA: It's jacket szn & they're 50% OFF! |
| 10/15/2025 | Obsessed with NEW cozy sweaters. Snag em' for 50-60% off! |
| 10/14/2025 | STARTS NOW: 50% OFF EVERYTHING! 🤯 |
| 10/11/2025 | NEW to the Dress Shop! Up to 35% off dresses, 2 days only |
| 10/04/2025 | 40% off now AND exclusive offers later?! 🎈 |
| 09/29/2025 | NEW tops just dropped + 40% off reg. price |
| 09/25/2025 | Ends TONIGHT: 40-70% off almost everything, including NEW |
| 09/24/2025 | 40-70% off almost everything ends TOMORROW |
| 09/22/2025 | It's ON: 40-70% off almost EVERYTHING |
| 09/21/2025 | LAST DAY to snag 30-60% off almost everything! |
| 09/15/2025 | SURPRISE! A treat: 50% off new, EXTENDED! 🍭 |
| 09/14/2025 | LAST DAY for 50% off reg. price, including NEW! |
| 09/12/2025 | OMG, so much NEW & it's 50% OFF! |
| 09/10/2025 | 50% off NEW arrivals! This sale just got BIGGER |
| 09/06/2025 | WHOA! 50% off + 10% off could be yours 🫣 |
| 08/31/2025 | 50% OFF spooky szn styles 🎃 |
| 08/30/2025 | Want 40% off your next order? 👀 |
| 08/25/2025 | LAST DAY FOR 40-70% OFF ALMOST EVERYTHING |

CLASS ACTION COMPLAINT - 10

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

| 08/23/2025 | Unlock 40% off your next order 🛍 |
| 08/22/2025 | Hello, NEW Belle Isle! + 40% OFF our exclusive brands |
| 08/16/2025 | 40% off now AND exclusive offers later?! 🔥 |
| 08/15/2025 | LAST WEEKEND! This is your chance to snag 50% off |
| 08/14/2025 | Just dropped: Lavender Haze + 40% off NEW! |
| 08/12/2025 | 50% off could be YOURS...but snag it by TONIGHT |
| 08/10/2025 | FINAL HOURS! $19 & up bras, $5.99 & up panties, 40% off lingerie |
| 08/02/2025 | 50% off ENTIRE SITE: Hot now, GONE TONIGHT |
| 08/02/2025 | 📢 LAST DAY to snag 50% off ENTIRE SITE! 📢 |
| 08/01/2025 | ICYMI: 50% off ENTIRE site NOW! Act FAST |
| 07/31/2025 | URGENT MEMO! 😲 SURPRISE 50% OFF |
| 07/29/2025 | 50-70% off almost EVERYTHING starts NOW! |
| 07/26/2025 | New dresses + 30% off ALL reg. price?! Win-win |
| 07/23/2025 | FINAL HOURS for 40-70% off! |
| 07/19/2025 | NEW tops. BIG deal. 30% off & STACKS with Torrid Cash! |
| 07/17/2025 | 100s of NEW styles added: 25-30% off! |
| 07/12/2025 | 40% off now AND exclusive offers later?! 🔥 |
| 07/06/2025 | LAST DAY: 50-60% off almost EVERYTHING! |
| 07/01/2025 | 50-60% off almost EVERYTHING starts NOW! |
| 06/18/2025 | Last chance for 40% off almost EVERYTHING! |
| 06/17/2025 | Starts NOW: 40% off almost everything! 2 days only |
| 06/16/2025 | LAST DAY to snag 40-70% off online! |
| 06/12/2025 | 40-70% off starts NOW! |
| 06/11/2025 | FINAL HOURS to make 50% off yours! |
| 06/10/2025 | 50% off (including NEW) could be YOURS! 2 days only! |
| 06/07/2025 | 40% off now AND exclusive offers later?! 🔥 |
| 06/04/2025 | Starts NOW: Up to 70% off the ENTIRE site! |

CLASS ACTION COMPLAINT - 11

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

| | |
|---|---|
| 06/03/2025 | 1 Day Only: 50% off (including NEW) could be yours! |
| 06/02/2025 | FINAL HOURS for up to 70% off select tops & dresses |
| 05/29/2025 | Hey [name], Starts now! 40-70% off almost EVERYTHING |
| 05/26/2025 | FINAL HOURS for 50% off new arrivals! |
| 05/25/2025 | Just added: 60% off ALL swim! |
| 05/24/2025 | Just Added! 60% off swim & 30% off our exclusive brands! |
| 05/23/2025 | NEW deals! 100s of styles now 60% off! |
| 05/21/2025 | 50% off NEW: Memorial Week Sale starts now! |
| 05/14/2025 | New shorts. New graphics. BOTH 35% off! |
| 05/07/2025 | 40% off (including NEW!) is all yours |
| 05/04/2025 | 📢 LAST DAY for up to 70% off almost everything! 📢 |
| 04/29/2025 | Hot. New. DRESSES up to 70% off |
| 04/29/2025 | Ready. Set. Sun! SALE: up to 70% off almost everything starts now |
| 04/28/2025 | Srsly, this is it: FINAL HOURS for 50% off almost EVERYTHING! |
| 04/28/2025 | LAST DAY: 50% off almost everything! |
| 04/25/2025 | The Daily Drop. All NEW! + 50% off almost everything |
| 04/22/2025 | It's our birthday 😊 Take 50% off almost EVERYTHING! |
| 04/16/2025 | Your perfect new shorts, up to 70% off! |
| 04/14/2025 | 40-70% off entire site starts NOW! Online only. |
| 04/12/2025 | 40% off now AND exclusive offers later?! 🔥 |
| 04/10/2025 | 25% off 100s of NEW styles added. Stack with Torrid Cash! |
| 04/05/2025 | How to get 40% off your ENTIRE next order 📝 |
| 03/30/2025 | LAST DAY for 25% off select styles, save MORE w/ stacking deals site wide! |
| 03/24/2025 | 📢 Last chance for 50% off DRESSES! 📢 |
| 03/20/2025 | Hot 2 go: up to 70% off sitewide! |
| 03/20/2025 | Hey HEY first day of spring! + 40% off NEW arrivals |
| 03/18/2025 | Up to 70% off SITEWIDE! |

CLASS ACTION COMPLAINT - 12

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

| 03/12/2025 | Starts NOW! NEW dresses 50% off online! 😍 |
| 03/11/2025 | LAST DAY �davestext 40% off sitewide! |
| 03/07/2025 | Just dropped! 40% off NEW! |
| 03/04/2025 | Snag up to 70% off select styles: 3 DAYS ONLY! |
| 02/26/2025 | It's ALL for you! 50% off almost everything starts NOW |
| 02/23/2025 | LAST DAY for up to 70% off! |
| 02/21/2025 | BIG deal: Up to 70% off starts NOW! |
| 02/20/2025 | LAST DAY for 50% off, Insider! + NEW matching sets |

44.    The above violative emails are only a fraction of the total number of such violative emails Torrid sent to Washington State residents within the applicable limitations period.

45.    The advertised percentage-off discounts in these email subject lines are viewed both under the law and by reasonable consumers to refer to discounts from Torrid's regular offering prices for its products. In reality, Torrid calculated the "xx% Off" statements from fictitious list prices at which Torrid never or almost never offered its products. Meanwhile, there was no qualifier or other indicator in the subject line to notify the email recipients that Torrid had assigned these words and symbols an invented or unusual subjective meaning rather than their ordinary or objective meaning.

46.    As of the date of the filing of this Complaint, Plaintiff is still receiving Torrid's commercial emails. Plaintiff would like to continue receiving Torrid's commercial emails, provided that the subject lines of the emails do not contain false or misleading information.

**D.    Torrid Sent Commercial Emails To Consumers Whom It Knew, Or Had Reason To Know, Resided In Washington State.**

47.    Torrid sent the false and misleading commercial emails to email addresses that Torrid knew, or had reason to know, were held by Washington State residents (i.e., Plaintiff and members of the Class), because Torrid had a physical Washington State address that was associated with the recipient and/or Torrid had access to data regarding the recipient indicating

CLASS ACTION COMPLAINT - 13

that they were in Washington State. Torrid knew or should have known that Plaintiff and the members of the Class were residents of Washington State.

48.    For virtually all of the recipients of its commercial emails, Torrid knew the state in which they resided because they had previously provided their physical address to Torrid when they had placed an order through the Torrid website or when they had signed up for a Torrid online account. Whenever a person places an order through the Torrid website, Torrid associates that email address with the shipping address and billing address provided for the order. Additionally, nearly all of the commercial email recipients had created Torrid online accounts. As part of the online account creation process, Torrid requires customers to provide their contact information including physical address, zip code, phone number, and email address.

49.    Discovery will show that, at the time Torrid sent the commercial emails to the members of the Class, Torrid had the physical address for virtually every single Class member.[3]

### CLASS ALLEGATIONS

50.    Plaintiff brings this lawsuit on behalf of herself and the members of the following class (the "Class"):

> **All residents of the State of Washington who, within the applicable limitations period, received an email from or at the behest of Defendant that contained in the subject line a "xx% Off" or similar percentage-off statement.**

[3] Torrid also had other methods by which it could have determined whether the consumers to whom it sent the violative emails resided in Washington. Discovery will show that Torrid employs methods to track the effectiveness of its marketing emails and to identify consumers who click on links contained in Torrid's marketing emails, including by identifying their physical location. Torrid could have used the information obtained through these online tracking technologies to identify which consumers are in Washington.

Additionally, Torrid knew, or had reason to know, that the email addresses were held by Washington residents because this information was available to Torrid upon request from the registrant of the internet domain name contained in each recipient's email address. *See* RCW 19.190.020(2). Torrid also knew or had reason to know that it sent emails to Washington residents due to its large presence in the state and the volume of marketing emails it sends to people around the country. *See State v. Heckel*, 122 Wash. App. 60, 69 (2004) (holding as a matter of law that a defendant had a reason to know that he sent emails to Washington residents by sending over 100,000 emails a week to people around the country).

CLASS ACTION COMPLAINT - 14

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

51. Specifically excluded from the Class are the Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant, Defendant's agents and employees and attorneys, the bench officers to whom this civil action is assigned, and the members of each bench officer's staff and immediate family.

52. **Numerosity.** The number of members of the Class are so numerous that joinder of all members would be impracticable. Plaintiff does not know the exact number of Class members prior to discovery. However, based on information and belief, the Class comprises thousands of individuals. The exact number and identities of Class members are contained in Torrid's records and can be easily ascertained from those records.

53. **Commonality and Predominance.** This action involves multiple common legal or factual questions which are capable of generating class-wide answers that will drive the resolution of this case. These common questions predominate over any questions affecting individual Class members, if any. These common questions include, but are not limited to, the following:

a. Whether Defendant sent commercial emails with false or misleading information in the subject lines;

b. Whether Defendant initiated the transmission or conspired to initiate the transmission of such commercial emails to recipients residing in Washington State;

c. Whether Defendant should be ordered to pay statutory damages to Plaintiff and Class members; and

d. Whether Defendant should be enjoined from further engaging in the misconduct alleged herein.

54. **Typicality.** Plaintiff's claims are typical of Class members' claims. Defendant transmitted, conspired to transmit, or assisted to transmit emails with false or misleading information in the subject line to Plaintiff and to each Class member. Plaintiff and Class members all bring the same claims and face the same potential defenses.

55. **Adequacy.** Plaintiff and her counsel will fairly and adequately protect Class members' interests. Plaintiff has no interests antagonistic to Class members' interests and is

CLASS ACTION COMPLAINT - 15

committed to representing the best interests of the Class members. Moreover, Plaintiff has retained counsel with considerable experience and success in prosecuting complex class action and consumer protection cases.

56.    **Superiority.** A class action is superior to all other available methods for fairly and efficiently adjudicating this controversy. Each Class member's interests are small compared to the burden and expense required to litigate each of his or her claims individually, so it would be impractical and would not make economic sense for Class members to seek individual redress for Defendant's conduct. Individual litigation would add administrative burden on the courts, increasing the delay and expense to all parties and to the court system. Individual litigation would also create the potential for inconsistent or contradictory judgments regarding the same uniform conduct. A single adjudication would create economies of scale and comprehensive supervision by a single judge. Moreover, Plaintiff does not anticipate any difficulties in managing a class action trial.

57.    By its conduct and omissions alleged herein, Defendant has acted and refused to act on grounds that apply generally to the Class members, such that final injunctive relief and/or declaratory relief is appropriate respecting the Class as a whole.

58.    Defendant is primarily engaged in the business of selling goods. Each cause of action asserted by Plaintiff against Defendant in this Complaint arises out of and is limited to communications related to Defendant's sale of goods.

## CAUSES OF ACTION

### COUNT I
**Violation of the Washington Consumer Protection Act**
**RCW Chapter 19.86**

59.    Plaintiff realleges and incorporates by reference all paragraphs previously alleged herein.

60.    Plaintiff pleads this count in three separate capacities: in her individual capacity, as a private attorney general, and as a proposed class representative serving on behalf of all others similarly situated.

61.    The Washington Consumer Protection Act (the "CPA"), RCW 19.86, is

CLASS ACTION COMPLAINT - 16

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

Washington's principal consumer protection statute. The CPA's primary substantive provision declares unfair methods of competition and unfair or deceptive acts or practices to be unlawful. RCW 19.86.020.

62.    The CPA recognizes and incorporates *per se* violations. "Per se CPA violations are predicated on the Legislature's recognition that certain conduct is categorically against the public interest." *Brown v. Old Navy, LLC*, 567 P.3d 38, 46 (Wash. 2025). The Washington Legislature routinely prohibits certain specified conduct but, instead of, or in addition to, creating a new and independent private right of action to enforce the prohibition, the Legislature deems the unlawful conduct to be a *per se* violation of the CPA.

63.    If a defendant engages in that unlawful conduct, a plaintiff may file a CPA complaint alleging the *per se* violation and seek the remedies available under the CPA and/or the remedies available under the statute which forbids the *per se* violation. *See* Washington Pattern Jury Instruction Civil No. 310.03 (*Per Se* Violation of Consumer Protection Act) and Appendix H (Consumer Protection Act *Per Se* Violations).

64.    A plaintiff can plead a violation of the CPA by pleading that the CPA was violated *per se* due to a violation of the Washington Commercial Electronic Mail Act ("CEMA"). *See Brown*, 567 P.3d at 42 ("A violation of CEMA's email regulations is a per se violation of the Consumer Protection Act (CPA)."); *see also* RCW 19.190.030(1)(b) ("It is a violation of the consumer protection act, chapter 19.86 RCW . . . to initiate the transmission of a commercial electronic mail message that . . . [c]ontains false or misleading information in the subject line.").

65.    CEMA prohibits a person from initiating the transmission to an email address that the sender knows or has reason to know is held by a Washington State resident of a commercial email that contains false or misleading information in the email's subject line. RCW 19.190.020(1)(b). The Washington Supreme Court has held that this includes subject lines with **any** false or misleading information. *Brown*, 567 P.3d at 47 ("[CEMA] prohibits

CLASS ACTION COMPLAINT - 17

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

sending Washington residents commercial emails that contain *any* false or misleading information in the subject lines of such emails.") (emphasis in original).[4]

66.    "CEMA was enacted to protect concrete interests in being free from deceptive commercial emails. CEMA's prohibition on sending commercial emails with false or misleading subject lines . . . creates a substantive right to be free from deceptive commercial emails." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1011 (W.D. Wash. Nov. 27, 2019) (holding that the plaintiff sufficiently pleaded a concrete injury-in-fact for alleged CEMA violations based on her receipt of marketing emails from defendant containing allegedly false "xx% off" statements in the subject line).

67.    Under CEMA, it is irrelevant whether the commercial emails were solicited. *Harbers*, 415 F. Supp. 3d at 1011.

68.    Generally, a plaintiff pleading a claim under the CPA must plead five necessary elements: (1) an unfair or deceptive act or practice (2) in trade or commerce (3) that affects the public interest, (4) injury to plaintiff's business and property, and (5) causation. *Wright v. Lyft, Inc.*, 189 Wn.2d 718, 728 (2017). **Because Plaintiff alleges a *per se* CPA violation by alleging a CEMA violation, all of these five elements are satisfied as a matter of law.** *Id.* at 724; *see also Brown*, 567 P.3d at 42.

69.    "Under CEMA, the injury is receiving an email that violates its regulations." *Brown*, 2025 WL 1132243, at *2. Accordingly, **"CEMA does not require a showing of injury for statutory damages to be awarded because the injury is receiving the email that violates CEMA."** *Id.* at 45; *see also Wright*, 189 Wn.2d at 729 ("[CEMA] does not condition the award of damages on proving either injury or causation. In fact, damages for CEMA violations are *automatic*.") (emphasis in original).

---

[4] CEMA also prohibits a person from initiating the transmission from a computer located in Washington State of a commercial electronic mail message which contains false or misleading information in the subject line. RCW 19.190.020(1)(b). Plaintiff is not alleging a CEMA violation under this prong because, as of the filing of this lawsuit, she does not possess information that the offending emails were transmitted from a computer located in Washington State. Plaintiff reserves the right to seek to amend this pleading in the event that she obtains information, through discovery or otherwise, which indicates that the offending emails were transmitted from a computer located in Washington State.

CLASS ACTION COMPLAINT - 18

70. A plaintiff who successfully pleads and proves a CEMA violation as a *per se* violation of the CPA may recover the remedies which the plaintiff chooses to seek that are available under the CPA (e.g., injunctive relief, treble damages, attorneys' fees and costs (RCW 19.86.090)) and/or the remedies available under CEMA (e.g., statutory damages of $500 per email sent in violation of CEMA and injunctive relief (RCW 19.190.040, RCW 19.190.090)).

71. **"Unlike the CPA, CEMA's $500 penalty does not require a showing of actual damages."** *Brown*, 567 P.3d at 42. A person is entitled to $500 statutory damages "anytime a prohibited message is transmitted." *Harbers*, 415 F. Supp. 3d at 1009; *see also In re Classmates.com Consol. Litig.*, No. C09-45RAJ, 2011 WL 744664, at *7 (W.D. Wash. Feb. 23, 2011) ("[CEMA] provides statutory damages of $500 for every email that violates it.").

72. Defendant is a "person" within the meaning of CEMA. RCW 19.190.010(11).

73. Torrid has initiated the transmission, conspired with another to initiate the transmission, and/or assisted the transmission of numerous commercial emails with subject lines containing false or misleading information to Plaintiff and the Class. RCW 19.190.030(1)(b).

74. The subject lines of Torrid's emails contained materially false or misleading information.

75. The false or misleading information in the subject lines of Torrid's emails was intended to, or had the capacity to, deceive a substantial portion of the public.

76. The emails were electronic mail messages, in that they were emails sent to an email address; the emails also referred to an internet domain, whether or not displayed, to which an email can or could be sent or delivered. RCW 19.190.010(5).

77. The emails were "commercial electronic mail messages," in that they were sent for the purpose of promoting goods or services for sale or lease. RCW 19.190.010(2).

78. Torrid was the original sender of the emails.

79. Plaintiff and the Class members each received the emails at their electronic mail addresses, which are the destinations, commonly expressed as a string of characters, at which they receive and to which electronic mail may be sent or delivered. RCW 19.190.010(4).

CLASS ACTION COMPLAINT - 19

80.    Torrid initiated the transmission, conspired with another to initiate the transmission, and/or assisted the transmission of the emails to one or more email addresses that Torrid knew, or had reason to know, was held by a Washington State resident, i.e., Plaintiff and members of the Class.

81.    At all relevant times, Defendant knew, or had reason to know, that the intended recipients (Plaintiff and members of the Class) were residents of the State of Washington because, without limitation: (1) Defendant possessed actual knowledge of Plaintiff's and each Class member's state of residence; (2) Defendant possessed constructive knowledge of Plaintiff's and each Class member's state of residence; (3) information was available to Defendant upon request from the registrant of the internet domain name contained in each recipient's email address; and/or (4) Defendant otherwise knew or should have known or had reason to know that Plaintiff and the members of the Class were residents of the State of Washington.

82.    For example, without limitation, Defendant knew or had reason to know that it sent emails to Washington residents because nearly every consumer who received its commercial emails had previously provided Torrid with their physical address when they placed an order on the Torrid website and/or when they created a Torrid online account.

83.    Defendant engaged in a pattern and practice of violating CEMA. As a result of Defendant's acts and omissions, Plaintiff and Class members are entitled to $500 in statutory damages for each and every email that violated CEMA that was transmitted to them. Plaintiff and Class members are also entitled to recover actual damages, treble damages, and attorneys' fees and costs, pursuant to RCW 19.86.090.

84.    Treble damages are appropriate under these circumstances because, without limitation, Torrid's misconduct has been "an ongoing course of conduct affecting thousands of consumers" and thus has a "strong public interest impact." *See Matheny v. Unumprovident Corp.*, 594 F. Supp. 2d 1212, 1225 (E.D. Wash. 2009).

CLASS ACTION COMPLAINT - 20

85.    **Permanent public injunctive relief.** Plaintiff, acting as a private attorney general, seeks public injunctive relief under the CPA to protect the general public from Torrid's misconduct.

86.    The Washington Supreme Court treats consumers as "private attorneys general," and has held that consumers' ability to enjoin unlawful conduct is a primary purpose of the CPA:

> Private actions by private citizens are … an integral part of CPA enforcement. **Private citizens act as private attorneys general** in protecting the public's interest against unfair and deceptive acts and practices in trade and commerce. **Consumers bringing actions under the CPA do not merely vindicate their own rights; they represent the public interest and may seek injunctive relief even when the injunction would not directly affect their own private interests**."

*Scott v. Cingular Wireless*, 160 Wash. 2d 843, 161 P.3d 1000, 1006 (2007) (emphasis added).

87.    This type of injunctive relief has been referred to as "public injunctive relief." *See McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 393 P.3d 85, 90 (2017) ("[P]ublic injunctive relief … is relief that has 'the primary purpose and effect of' prohibiting unlawful acts that threaten future injury to the general public.") (quoting *Broughton v. Cigna Healthplans of California*, 21 Cal. 4th 1066, 988 P.2d 67, 74 (1999)). The *Broughton* court likewise referred to consumers seeking public injunctive relief as "private attorneys general." *See Broughton*, 21 Cal. 4th at 1077.

88.    Defendant's misconduct, which affects and harms the general public, is ongoing in part or in whole and even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by Defendant absent a permanent public injunction. Accordingly, Plaintiff seeks an order enjoining Defendant from committing the unlawful conduct alleged herein.

89.    The balance of the equities favors the entry of permanent public injunctive relief against Defendant. Plaintiff, the members of the Class, honest competing businesses, and the general public will be irreparably harmed from Defendant's ongoing misconduct absent the entry of permanent public injunctive relief against Torrid.

CLASS ACTION COMPLAINT - 21

90.     Plaintiff lacks an adequate remedy at law to prevent Torrid from engaging in the unlawful conduct alleged herein. Plaintiff continues to receive commercial emails from Torrid, and she wants to continue receiving commercial emails from Torrid in the future, provided that the subject lines of the emails do not contain false or misleading information. Plaintiff will be harmed if, in the future, she receives commercial emails from Torrid that have false or misleading information in their subject lines.

91.     Monetary damages are not an adequate remedy at law for <u>future</u> harm. *Clark v. Eddie Bauer LLC*, 2024 WL 177755, at *3 (9th Cir. Jan. 17, 2024). Monetary damages are inadequate for future harm for the following reasons, without limitation: First, damages are not an adequate remedy for future harm because they will not prevent Defendant from engaging in its unlawful conduct. Second, damages for future harm cannot be calculated with certainty and thus cannot be awarded. For example, it is impossible to know how many violative emails Defendant will send Plaintiff in the future. Third, injunctive relief is necessary (and monetary damages do not provide a plain, adequate and complete remedy) because, without forward-looking injunctive relief enjoining the unlawful conduct, the courts may be flooded with future lawsuits by Class members, Plaintiff, and the general public for future violations of the law by Defendant.

**COUNT II**
**Violation of the Washington Commercial Electronic Mail Act**
**RCW Chapter 19.190**

92.     Plaintiff realleges and incorporates by reference all paragraphs alleged hereinabove.

93.     Plaintiff pleads this count in three separate capacities: in her individual capacity, as a private attorney general, and as a proposed class representative serving on behalf of all others similarly situated.

94.     The Washington Commercial Electronic Mail Act ("CEMA"), RCW 19.190, creates an independent private of right of action which can be asserted by, among others, a person who is the recipient of a commercial electronic mail message which contains false or misleading information in the subject line. RCW 19.190.030(1)(b). A plaintiff who successfully

CLASS ACTION COMPLAINT - 22

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

alleges and proves such a violation may obtain, among other things, an injunction against the person who initiated the transmission. RCW 19.190.090(1). It is Plaintiff's intent in this count to plead an independent CEMA cause of action only to the extent that it is recognized by law, e.g., when a plaintiff seeks injunctive relief. *Wright v. Lyft, Inc.*, 189 Wn.2d 718, 728 n. 3 (2017) ("we note that a plaintiff may bring an action to enjoin any CEMA violation."); *Gragg v. Orange Cab Co.*, 145 F. Supp. 3d 1046, 1052 (W.D. Wash. 2015).

95.     Defendant has violated CEMA on the grounds alleged in Count I above.

96.     For the reasons alleged in Count I, Plaintiff seeks, and may obtain, a permanent public injunction against Defendant.

## PRAYER FOR RELIEF

A.     Plaintiff Malina Brown, on behalf of herself and the proposed Class, requests that the Court order relief and enter judgment against Defendant Torrid LLC, as follows:

1.     Declare this action to be a proper class action, certify the proposed Class, and appoint Plaintiff and her counsel to represent the Class;

2.     Permanently enjoin Defendant from engaging in the unlawful conduct alleged herein, pursuant to, without limitation, RCW 19.86.090; RCW 19.190.090(1);

3.     Order Defendant to pay Plaintiff and each member of the Class statutory damages of $500 for each and every commercial email that Defendant transmitted to them within the applicable statute of limitations that contained false or misleading information in the subject line in violation of CEMA pursuant to, without limitation, RCW 19.190.020(1)(b), RCW 19.190.030(1)(b), RCW 19.190.040(1);

4.     Order Defendant to pay treble damages pursuant to RCW 19.86.090;

5.     Order Defendant to pay attorneys' fees, costs, and pre-judgment and post-judgment interest to the extent allowed by law; and

6.     Grant such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

CLASS ACTION COMPLAINT - 23

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

Dated: October 19, 2025

HATTIS LUKACS & CORRINGTON

By: _____
Daniel M. Hattis

By: _____
Che Corrington

Daniel M. Hattis, WSBA No. 50428
dan@hattislaw.com
Che Corrington, WSBA No. 54241
che@hattislaw.com
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Tel: 425.233.8650
Fax: 425.412.7171

*Attorneys for Plaintiff*
*and the Proposed Class*

CLASS ACTION COMPLAINT - 24

ØŒŠÒÖ
ŒŒÍ ÁJÔVÁŒÆJ€€ÁŒ
SŒÕÁÔUWÞVŸ
ÙWÚÒÜ0JÜÁÔUWÜVÁÔŠÒÜS
ÒŒ0ŒŠÒÖ
ÔŒŒÒÒÁ€Á€€Ï Í È ÁŠÞV

# IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
# FOR THE COUNTY OF KING

|  |  |
|---|---|
| BROWN | No. 25-2-30875-8  KNT |
| VS | **CASE INFORMATION COVER SHEET AND AREA DESIGNATION** |
| TORRID LLC | (CICS) |

## CAUSE OF ACTION

CPA - Consumer Protection Act

## AREA OF DESIGNATION

KNT          All of King County south of Interstate 90 except those areas included in the Seattle Case Assignment Area.

ØŠÒÖ
G€GꞮÁUÔVÁŒÆJK€€ÁŒꞮ
SŒÕÁÔUWꞀVŸ
ÙWÚÒÜ①JÜÁÔUWÜVÁÔŠÒÜS
ÒꞮŠÒÖ
ÔŒÜÒ�ÁꞀGꞮꞮ꞉ïíⱧÁSꞀV

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON**
**FOR THE COUNTY OF KING**

| | | |
|---|---|---|
| MALINA BROWN | | No. 25-2-30875-8  KNT |
| | Plaintiff(s) | **ORDER SETTING CIVIL CASE SCHEDULE** |
| vs | | |
| | | **ASSIGNED JUDGE: Josephine Wiggs, Dept. 17** |
| TORRID LLC | | |
| | | FILED DATE: 10/20/2025 |
| | Defendant(s) | TRIAL DATE:10/26/2026 |

A civil case has been filed in the King County Superior Court and will be managed by the Case Schedule on Page 3 as ordered by the King County Superior Court Presiding Judge.

## I.  NOTICES

**NOTICE TO PLAINTIFF:**
The Plaintiff may serve a copy of this **Order Setting Case Schedule (*Schedule*)** on the Defendant(s) along with the ***Summons and Complaint/Petition***.  Otherwise, the Plaintiff shall serve the *Schedule* on the Defendant(s) within 10 days after the later of: (1) the filing of the ***Summons and Complaint/Petition*** or (2) service of the Defendant's first response to the ***Complaint/Petition***, whether that response is a ***Notice of Appearance***, a response, or a Civil Rule 12 (CR 12) motion.  The ***Schedule*** may be served by regular mail, with proof of mailing to be filed promptly in the form required by Civil Rule 5 (CR 5).

**NOTICE TO ALL PARTIES:**
All attorneys and parties should make themselves familiar with the King County Local Rules [*KCLCR*] -- especially those referred to in this ***Schedule***. In order to comply with the ***Schedule***, it will be necessary for attorneys and parties to pursue their cases vigorously from the day the case is filed. For example, discovery must be undertaken promptly in order to comply with the deadlines for joining additional parties, claims, and defenses, for disclosing possible witnesses [*See KCLCR 26*], and for meeting the discovery cutoff date [*See KCLCR 37(g)*].

**You are required to give a copy of these documents to all parties in this case.**

Order Setting Civil Case Schedule (ORSCS-CV)
Rev. 04/24/2023

Page 1

## I. NOTICES (continued)

**CROSSCLAIMS, COUNTERCLAIMS AND THIRD-PARTY COMPLAINTS:**
A statuary filing fee must be paid when any answer that includes additional claims is filed in an existing case.

**KCLCR 4.2(a)(2)**
A Confirmation of Joinder, Claims and Defenses or a Statement of Arbitrability must be filed by the deadline in the schedule. The court will review the confirmation of joinder document to determine if a hearing is required.  If a Show Cause order is issued, all parties cited in the order must appear before their Chief Civil Judge.

**PENDING DUE DATES CANCELED BY FILING PAPERS THAT RESOLVE THE CASE:**
When a final decree, judgment, or order of dismissal of all parties and claims is filed with the Superior Court Clerk's Office, and a courtesy copy delivered to the assigned judge, all pending due dates in this *Schedule* are automatically canceled, including the scheduled Trial Date. It is the responsibility of the parties to 1) file such dispositive documents within 45 days of the resolution of the case, and 2) strike any pending motions by notifying the bailiff to the assigned judge.

 Parties may also authorize the Superior Court to strike all pending due dates and the Trial Date by filing a *Notice of Settlement* pursuant to KCLCR 41, and forwarding a courtesy copy to the assigned judge. If a final decree, judgment or order of dismissal of all parties and claims is not filed by 45 days after a *Notice of Settlement*, the case may be dismissed with notice.

**If you miss your scheduled Trial Date**, the Superior Court Clerk is authorized by KCLCR 41(b)(2)(A) to present an *Order of Dismissal*, without notice, for failure to appear at the scheduled Trial Date.

**NOTICES OF APPEARANCE OR WITHDRAWAL AND ADDRESS CHANGES:**
*All parties to this action must keep the court informed of their addresses.* When a Notice of Appearance/Withdrawal or Notice of Change of Address is filed with the Superior Court Clerk's Office, parties must provide the assigned judge with a courtesy copy.

**ARBITRATION FILING AND TRIAL DE NOVO POST ARBITRATION FEE:**
A Statement of Arbitrability must be filed by the deadline on the schedule **if the case is subject to mandatory arbitration** and service of the original complaint and all answers to claims, counterclaims and crossclaims have been filed.  If mandatory arbitration is required after the deadline, parties must obtain an order from the assigned judge transferring the case to arbitration. **Any party filing a Statement must pay a statutory arbitration fee**. If a party seeks a trial de novo when an arbitration award is appealed, a statutory fee must be paid and the request for trial de novo must be filed with the Clerk's Office Cashiers.

**NOTICE OF NON-COMPLIANCE FEES:**
**All** parties will be assessed a fee authorized by King County Code 4A.630.020 whenever the Superior Court Clerk must send notice of non-compliance of schedule requirements and/or Local Civil Rule 41.

 **King County Local Rules are available for viewing at www.kingcounty.gov/courts/clerk.**

## II. CASE SCHEDULE

| * | CASE EVENT | EVENT DATE |
|---|---|---|
|  | Case Filed and Schedule Issued. | 10/20/2025 |
| * | Last Day for Filing Statement of Arbitrability without a Showing of Good Cause for Late Filing [*See KCLMAR 2.1(a) and Notices on Page 2*]. **$250 arbitration fee must be paid** | 03/30/2026 |
| * | **DEADLINE** to file Confirmation of Joinder if not subject to Arbitration [*See KCLCR 4.2(a) and Notices on Page 2*]. | 03/30/2026 |
|  | **DEADLINE** for Hearing Motions to Change Case Assignment Area [*KCLCR 82(e)*]. | 04/13/2026 |
|  | **DEADLINE** for Disclosure of Possible Primary Witnesses [*See KCLCR 26(k)*]. | 05/26/2026 |
|  | **DEADLINE** for Disclosure of Possible Additional Witnesses [*See KCLCR 26(k)*]. | 07/06/2026 |
|  | **DEADLINE** for Jury Demand [*See KCLCR 38(b)(2)*]. | 07/20/2026 |
|  | **DEADLINE** for a Change in Trial Date [*See KCLCR 40(e)(2)*]. | 07/20/2026 |
|  | **DEADLINE** for Discovery Cutoff [*See KCLCR 37(g)*]. | 09/08/2026 |
|  | **DEADLINE** for Engaging in Alternative Dispute Resolution [*See KCLCR 16(b)*]. | 09/28/2026 |
|  | **DEADLINE**: Exchange Witness & Exhibit Lists & Documentary Exhibits [*KCLCR 4(j)*]. | 10/05/2026 |
| * | **DEADLINE** to file Joint Confirmation of Trial Readiness [*See KCLCR 16(a)(1)*] | 10/05/2026 |
|  | **DEADLINE** for Hearing Dispositive Pretrial Motions [*See KCLCR 56; CR 56*]. | 10/12/2026 |
| * | Joint Statement of Evidence [*See KCLCR 4 (k)*] | 10/19/2026 |
|  | **DEADLINE** for filing Trial Briefs, Proposed Findings of Fact and Conclusions of Law and Jury Instructions (Do not file proposed Findings of Fact and Conclusions of Law with the Clerk) | 10/19/2026 |
|  | Trial Date [*See KCLCR 40*]. | 10/26/2026 |

*The * indicates a document that must be filed with the Superior Court Clerk's Office by the date shown.*

## III. ORDER

Pursuant to King County Local Rule 4 [*KCLCR 4*], IT IS ORDERED that the parties shall comply with the schedule listed above.  Penalties, including but not limited to sanctions set forth in Local Rule 4(g) and Rule 37 of the Superior Court Civil Rules, may be imposed for non-compliance.  It is FURTHER ORDERED that the party filing this action **must** serve this *Order Setting Civil Case Schedule* and attachment on all other parties.


DATED:     10/20/2025

_____

PRESIDING JUDGE


Order Setting Civil Case Schedule (ORSCS-CV)
Rev. 04/24/2023

ØŠÒÖ
ŒŒŠ́ÁJÔVŒŒ
SŒÕŐUŴVŸ
ÙŴÚÒŲ̈JÜŐUŴÜVŐŠÒÜS

ÔŒÜÒ̇́̇ŒẾ̇ ̈ Í Ë ́SʋV

# IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
# FOR THE COUNTY OF KING

| | |
|---|---|
| BROWN | No. 25-2-30875-8  KNT |
| VS | **CERTIFICATE OF E-SERVICE** |
| TORRID LLC | |

I, Angelina Lin, certify that I initiated electronic service of the following document(s) on the parties listed below who have consented to accept electronic service via the King County eFiling Application.  Service was initiated on October 22nd, 2025 at 1:15 p.m.

Document(s):

1.   Affidavit / Declaration / Certificate Of Service - Served

Parties:

1.   AngelinaLin, Attorney for  Plaintiff
2.   , E-Mail: angelina@hattislaw.com
3.   DanielHattis, Attorney for  Plaintiff
4.   , E-Mail: dan@hattislaw.com

Executed this 22nd day of October, 2025.

s/Angelina Lin,   angelina@hattislaw.com

Certificate of E-Service (AFSRES)
Rev. 05/2023

Page 1

ØŠÒÖ
Œ ÁÔ
SÕÔU Ý
ÙÚÒ UÜ ÔŠÜS

Ô Ò Œ ÁÞV

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON**
**FOR THE COUNTY OF KING**

| BROWN | No. 25-2-30875-8  KNT |
|---|---|
| VS | **CERTIFICATE OF E-SERVICE** |
| TORRID LLC | |

I, Angelina Lin, certify that I initiated electronic service of the following document(s) on the parties listed below who have consented to accept electronic service via the King County eFiling Application.  Service was initiated on October 22nd, 2025 at 1:14 p.m.

Document(s):

1.  Notice of Appearance

Parties:

1.  AngelinaLin, Attorney for  Plaintiff
2.  , E-Mail: angelina@hattislaw.com
3.  DanielHattis, Attorney for  Plaintiff
4.  , E-Mail: dan@hattislaw.com

Executed this 22nd day of October, 2025.

s/Angelina Lin,   angelina@hattislaw.com

ØŠÒÖ
GⱻGÍ ÁJÔVÁGⱯⱯFⱠÍ ÁJT
SĐÕ ÁÕUWⱣVŸ
ÙWÚÒÜQJÜ ÁÕUWÜVÁŠÒÜS
ÒⱧŠÒÖ
ÔŒÙÒ Á ⱠⱠⱠGⱠ ⱧGHⱠⱠ ï Í Ⱨ ÁŞⱣV

# SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

| Plaintiff / Petitioner: | Case No: |
|---|---|
| MALINA BROWN, for herself, as a private attorney general, and/or on behalf of all others similarly situated | 25-2-30875-8 KNT |
| Defendant / Respondent: | **DECLARATION OF SERVICE** |
| TORRID LLC | |

The undersigned, being first duly sworn on oath deposes and says: That she is now and at all times herein mentioned was a citizen of the United States, resident of Washington State, over the age of eighteen years, not a party to or interested in the above entitled action and competent to be a witness therein.

That on <u>Monday, October 20, 2025</u> at <u>2:25 PM</u>, at the address of <u>300 Deschutes Way Southwest Suite #208,</u> <u>Tumwater, WA 98501</u>, within <u>Thurston County</u>, the undersigned duly served the following document(s): <u>1) Summons (20 Days), 2) Class Action Complaint for Violation of the Consumer Protection Act, RCW 19.86, and</u> <u>the Commercial Electronic Mail Act, RCW 19.190, 3) Order Setting Civil Case Schedule, and, 4) Case Information</u> <u>Cover Sheet and Area Designation (CICS)</u> in the above entitled action upon <u>TORRID LLC</u>, by Registered Agent, <u>CORPORATION SERVICE COMPANY</u>, at the usual place of business of said Registered Agent, personally delivering 1 true and correct copy(ies) of the above documents and leaving same with <u>ELLEN JONES</u>, Customer Service Representative, Employee Authorized to Accept Service.

**Description:**
ELLEN JONES; Age: 60; Ethnicity: Caucasian; Sex: Female; Weight: 130; Height: 5'4"; Hair: Brown; Relationship: Customer Service Representative, Employee Authorized to Accept Service

**I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct:**

**Date:**    10/21/2025

Amber Gibbons, Thurston County #23-0727-18

ADDISON LEGAL SERVICES, LLC
2405 Evergreen Park Drive SW Suite B-2
Olympia, WA 98502, (360) 529-3933
Job #14401760 (TUM102025)

ØŠÒÖ
Œ€Ǵ ÁǓÔVÁœÆFKFHÁʹT
Sœ̃ÕÁ̂UWÞVŸ
ÙWÚÒÜœJÜÁ̂UWÜVÁ̂ÔŠÒÜS
ÒËŽŠÒÖ
Ô̂ŒǛUÒÂ̂ŁǴǴ̈ĒǴÈ€Ï Ï Í Ë̈Á̂ÞV

IN THE SUPERIOR COURT OF WASHINGTON
IN AND FOR THE COUNTY OF KING

MALINA BROWN,
for herself, as a private attorney general,
and/or on behalf of all others similarly
situated,

                    Plaintiff,

      v.

TORRID LLC,

                    Defendant.

No. 25-2-30875-8 KNT

NOTICE OF APPEARANCE
BY ANGELINA LIN

TO: THE CLERK OF COURT

AND TO: ALL PARTIES AND THEIR COUNSEL

PLEASE TAKE NOTICE that ANGELINA LIN, of HATTIS LUKACS & CORRINGTON hereby appears in this civil action as an attorney of record for Plaintiff MALINA BROWN, For Herself, As A Private Attorney General, And/or On Behalf Of All Others Similarly Situated.

NOTICE OF APPEARANCE
OF ANGELINA LIN
Page 1 of 2

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Tel: 425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

All further filings in this civil action should be served upon ANGELINA LIN, at the address or contact information stated below.

Respectfully submitted this 22nd day of October, 2025.

HATTIS LUKACS & CORRINGTON

By: _____
Angelina Lin

Angelina Lin, WSBA No. 62845
angelina@hattislaw.com
HATTIS LUKACS & CORRINGTON
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Tel: 425.233.8650
Fax: 425.412.7171

*Attorneys for Plaintiff*
*and the Proposed Class*

NOTICE OF APPEARANCE
OF ANGELINA LIN
Page 2 of 2

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Tel: 425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

ꝶꞨꞖꞨꞨ
ꝲꝲꞁꞮꞲꞰꞲꞮꞨꞮꞲꞯꞱ
ꞱꞯꞮꞁꞨꞰꞱꞶꞴ
ꞀꞰꝲꞯꞯꞇꞲꞰꞰꞀꞀꝶꞨꞯꞁꞱ
ꝲꞐꞨꝶꞨꞨ
ꞀꞁꞮꞀꞐꝲꞅꝲꝲꞐꞲꞲꞅꞁꞅꞁꞀꞰꞲ

# IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

## FOR THE COUNTY OF KING

| | |
|---|---|
| MALINA BROWN, for herself, as a private attorney general, and/or on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>    v.<br><br>TORRID LLC,<br><br>       Defendant. | Case No. 25-2-30875-8 KNT<br><br>**NOTICE OF APPEARANCE** |

**TO:**      **THE CLERK OF THE COURT;**

**AND TO:**    **PLAINTIFFS AND ALL ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendant Torrid, LLC ("Torrid" or "Defendant"), appears by and through attorney Meegan B. Brooks of Benesch, Friedlander, Coplan & Aronoff LLP, in the above-entitled cause and requests that all further correspondence and pleadings (except original process) herein be served upon the undersigned attorney at the address below stated. This Notice of Appearance is made specifically without waiver of any defenses or objections by Defendant as to personal jurisdiction, venue, process, service of process, or any other claims or defenses in law or equity.

**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250  FAX (628) 221-5828

Dated:  November 10, 2025

Respectfully submitted,

*/s/ Meegan B. Brooks*
MEEGAN B. BROOKS (WA 62516)
**BENESCH, FRIEDLANDER, COPLAN
& ARONOFF LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
Telephone:  628.600.2232
Email:  mbrooks@beneschlaw.com

*Attorney for Defendant Torrid, LLC.*

NOTICE OF APPEARANCE - 2
Case No. 25-2-30875-8 KNT

**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250  FAX (628) 221-5828

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of November, 2025, I caused to be served the foregoing

**NOTICE OF APPEARANCE** on the following party at the following address:

Daniel M. Hattis (WASB No. 50428)
Che Corrington (WASB No. 54241)
**HATTIS LUKACS & CORRINGTON**
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Telephone: (425) 233-8650
Email: dan@hattislaw.com
Email: che@hattislaw.com

*Attorneys for Plaintiff*

X via U.S. Postal Service, ordinary first-class mail

☐ via U.S. Postal Service, certified or registered mail

☐ via return receipt requested

☐ via hand delivery

☐ via facsimile

☐ via electronic service

X via other (specify) E-Mail

I declare under penalty of perjury that the foregoing is true and correct.

*/s/ Meegan B. Brooks*
Meegan B. Brooks (WA 62516)

NOTICE OF APPEARANCE - 3
Case No. 25-2-30875-8 KNT

**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250  FAX (628) 221-5828